## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA,

     **Plaintiff,**

v.

                        **Case No. 6:20-cv-** 72-Orl-40 LRH

**$63,490 IN U.S. CURRENCY,**

     **Defendant.**

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this complaint and alleges upon information and belief, in accordance with Supp'l Rule G(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

### NATURE OF THE ACTION

1.    This is a civil action *in rem* to forfeit to the United States of America, pursuant to 21 U.S.C. § 881(a)(6), approximately $63,490 in currency seized from Amy Isabel Reyes at the Orlando International Airport (Defendant Funds).

### JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over

all civil actions commenced by the United States, and pursuant to 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

3.     This Court has *in rem* jurisdiction over the Defendant Funds because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4.     Venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1395(b), because the Defendant Funds were found and seized in this district.

## THE DEFENDANT *IN REM*

5.     The Defendant Funds consist of approximately $63,490 in United States currency seized from Amy Isabel Reyes on September 22, 2019 at Orlando International Airport (OIA) by law enforcement officers who determined that there was probable cause to believe that the Defendant Funds constituted: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

6.     Homeland Security Investigations (HSI) took custody of the

Defendant Funds, which remain in the custody of the United States.   As set

forth in Supp'l Rule G(3)(b)(i), the Clerk of Court must issue a warrant to

arrest the Defendant Funds if they are in the government's possession,

custody, or control.

## BASIS FOR FORFEITURE

7.     The Defendant Funds are subject to forfeiture to the United

States pursuant to 21 U.S.C. § 881(a)(6) because they constitute: (1) money

furnished or intended to be furnished by a person in exchange for a controlled

substance in violation of the Controlled Substances Act; (2) proceeds traceable

to such an exchange; or (3) money used or intended to be used to facilitate a

violation of the Controlled Substances Act.

## FACTS

8.     The facts and circumstances supporting the forfeiture of the

Defendant Funds have been provided by HSI Special Agent John Kaufman,

who states as follows.

9.     On Sunday, September 22, 2019, Amy Isabel Reyes was ticketed

to fly on American Airlines flight #227 from Orlando, Florida to Los Angeles,

3

California at approximately 11:49 a.m.   California is a known source state for controlled substances.

10.     At approximately 11:10 a.m., while Reyes' checked suitcase was going through security screening, Transportation Security Administration discovered an anomaly (mass) within the suitcase.   A secondary screening revealed a sealed United States Postal Service envelope concealed within clothing inside of Reyes' suitcase.   Still unsure of what the anomaly was, TSA opened the envelope.   Once the envelope was opened, TSA discovered a vacuum sealed bag containing fabric transfer sheets:





11.    Hidden in between the fabric transfer sheets were several small stacks of U.S. currency.   The stacks of currency were spread out amongst the fabric transfer sheets like so:





12.     TSA located five similar envelopes in Reyes' suitcase, which
were not opened.   However, as a result of their findings, TSA contacted the
Orlando Police Department (OPD).   At approximately 11:23 a.m., OPD
officers responded to the TSA screening area to further investigate.[1]   After
discussing TSA's findings about how the money was concealed within Reyes'
suitcase, OPD Officer Juan Gonzalez rushed to Reyes' gate in order to talk
with her before she boarded her 11:49 a.m. flight.

13.     In the meantime, the contents of the envelope were placed back
in Reyes' suitcase, and OPD Officer Jared Famularo took Reyes' suitcase to

---

[1] OPD's interactions with TSA, and with Reyes, were video recorded by
officer worn body cameras.

the OPD substation at OIA to take pictures, and to wait for Reyes in case she

agreed to speak with law enforcement about the money.[2]

14.     At approximately 11:30 a.m., Officer Gonzalez made contact

with Reyes just as she was about to board her flight.   During their exchange,

Officer Gonzalez advised Reyes that her suitcase had been flagged and she

could either catch her flight or talk with investigators about the contents of her

suitcase.   Reyes responded that she would take her flight to California.

Officer Gonzalez then advised Reyes that her suitcase was in their custody

and that someone would be contacting her about it once she landed.   Reyes

then boarded her flight.

15.     When Officer Gonzalez returned to the OPD substation at the

TSA screening check-point, he was advised that Reyes had gotten off the plane

and wanted to speak with him.

16.     OPD officers met Reyes at her gate, where she was on stand-by

for a 5:00 p.m. flight.   She agreed to go back to the OPD substation to speak

---

[2] On the way to OPD's office, Officer Famularo was met by OPD Officer
Rich Roman, who took pictures of the money.   Officer Roman noted that
Reyes' bag smelled of marijuana after he had opened it to take pictures of the
money.

with officers and retrieve her bag (minus the money).   She was told that she

was free to leave at any time.

17.    Ultimately, Metropolitan Bureau of Investigation (MBI) Agent

Joshua Evans conducted a recorded interview with Reyes.   Agent Evans

explained to Reyes that TSA had found an anomaly in her suitcase during the

screening process and potential contraband was found.

18.    Reyes indicated that she had flown to Orlando on Thursday

(September 19th) from California, where she resides, "to visit."   When asked

who she came to visit, she indicated no one, that she had traveled to Orlando

by herself to "visit" and to "explore."

19.    However, when Agent Evans asked Reyes is she had packed her

suitcase, Reyes indicated that she did not pack her suitcase and did not know

who had.   She claimed that her suitcase was "just already packed."   When

asked how someone else could have packed her suitcase, Reyes said, "I don't

know," despite the fact that she admitted to having gone into her suitcase to

change clothes since arriving in Orlando four days before.   In fact, later in the

interview, Reyes specifically asked where a box of cereal and a pair of sandals

were that she had placed in her suitcase.

20.     Reyes was then asked by Agent Evans if the money found in her suitcase belonged to her, and she said, "I don't know."   Thereafter, Reyes was asked what the money was intended for, and Reyes again stated, "I don't know."   Agent Evans then asked Reyes who she was supposed to bring the money to; she again said, "I don't know."

21.     When asked how much money she thought was in her suitcase, Reyes replied, "I don't know."   Agent Evans then asked Reyes for her permission to search her bag.   She agreed.

22.     When Agent Evans located the additional envelopes, which had not been opened, he asked Reyes if she knew what was in them.   Reyes indicated that she did not know what was in them, and then gave her consent to Agent Evans to open them.

23.     In total, Agent Evans found six United States Postal Service envelopes, which contained currency in between fabric transfer sheets that had been vacuum sealed:







24.     While searching through her suitcase, Agent Evans could smell the odor of marijuana inside the suitcase.   Consequently, Agent Evans asked Reyes if she was involved in the marijuana industry, to which she responded "no."   Agents then asked if Reyes has smoked marijuana earlier, or if she had smoked marijuana anytime in the past around the suitcase, to which she also responded "no."

25.     Agent Evans further asked Reyes what she did while she was in Florida.   Reyes indicated that she went "shopping" and ate really good Colombian food.

26.     The then 20-year-old indicated that she was a full-time student, and worked part-time at the clothing store "Guess."

27.     Because of the suspicious nature in which the money was found, the smell of marijuana emanating from Reyes' suitcase, and her inability to provide any information about where the money came from, HSI seized it.

28.     The following day, a properly trained narcotics detection dog, "Milli," positively alerted to the presence of the odor of drugs on the Defendant Funds.   Milli is trained to detect the odor of six controlled substances: cannabis, cocaine HCL, cocaine base, heroin, methamphetamine, and MDMA.

29.   Individuals who handle controlled substances often get traces of the substances on their hands and clothing.   These trace amounts of a controlled substance can easily be spread to other items the individual touches such as currency.   A positive alert to U.S. currency by a properly trained dog indicates that the currency had either been handled by someone who had trace amounts of a controlled substance on their hands, or the currency had recently been in close proximity to a controlled substance.

30.   The seized money was taken to Loomis Financial Services where it was counted.   The official count was $63,490.   The money was comprised of:

| | |
|---|---|
| 77 | $100 bills |
| 53 | $50 bills |
| 2,565 | $20 bills |
| 147 | $10 bills |
| 74 | $5 bills |

The specific denomination amounts are consistent with street-level drug sales.

## CONCLUSION

31.   As required by Supp'l Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial.   Specifically, probable cause exists to believe that the Defendant Funds constitute: (1) money furnished or intended to be furnished

by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, pursuant to Supp'l Rule G, Plaintiff United States of America respectfully requests that process of forfeiture be issued against the Defendant Funds; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that the Defendant Funds be forfeited to the United States for disposition according to law; and

that the United States have such other and further relief as this case may require.

Dated: January __15__, 2020

                        Respectfully submitted,

                        MARIA CHAPA LOPEZ
                        United States Attorney

By:                        

                        Nicole M. Andrejko
                        Assistant United States Attorney
                        Florida Bar No. 0820601
                        400 West Washington Street, Suite 3100
                        Orlando, Florida 32801
                        Telephone:  (407) 648-7500
                        Facsimile:  (407) 648-7643
                        E-Mail:     Nicole.Andrejko@usdoj.gov

## VERIFICATION

I, John F. Kaufman, hereby verify and declare under penalty of perjury, that I am a Special Agent with the Homeland Security investigations, and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case together with other HSI Special Agents and Task Force Officers.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this _14_ day of January, 2020.

John F. Kaufman, Special Agent
Homeland Security Investigations

16

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

### DEFENDANTS
$361,407 in U.S. Currency

County of Residence of First Listed Defendant   Orange
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander   Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability   Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine   ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury -   ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Medical Malpractice   ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations   ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)(6)
Brief description of cause:
proceeds traceable to and/or money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 & 846

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.   DEMAND $ ____   CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE ____   DOCKET NUMBER ____

DATE  1/14/20   SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____